JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>JANET N. WAGABAZA,<br><br>Debtor.<br>_____<br><br>R. ERIC BEVERIDGE,<br><br>Appellant,<br><br>v.<br><br>JANET N. WAGABAZA,<br><br>Appellee. | Case No. 5:18-CV-00406-JLS<br><br>Adv. Case No. 6:17-AP-01117-MJ<br><br>BK Case No. 6:07-BK-17151-MJ<br><br>**ORDER DENYING REQUEST FOR ORAL ARGUMENT (DOC. 67)**<br><br>**ORDER AFFIRMING BANKRUPTCY COURT JUDGMENT AND ORDER RE ATTORNEY'S FEES** |

This is a bankruptcy appeal. It arises out of the Bankruptcy Court's disposition of an adversary proceeding ("AP") captioned *Janet Nabwanda Wagabaza v. R. Eric Beveridge, et al.*, Case No. 6:17-ap-01117-MJ (C.D. Bankr.), which is part of a bankruptcy action captioned *In re Janet Nabwanda Wagabaza*, Case No. 6:07-bk-17151-MJ (C.D. Bankr.). Specifically, Appellants R. Eric Beveridge, as Trustee of The R. Eric Beveridge Separate Property Trust Dated February 12, 1999, and Special Default Services, Inc. (collectively, "Beveridge") appeal the Bankruptcy Court's award of summary judgment in favor of the Debtor, Janet Nabwanda Wagabaza

("Debtor"), which ultimately culminated in the Bankruptcy Court's Judgment.[1] Beveridge also appeals the Order Awarding Attorney's Fees and Costs in favor of Debtor.[2]

The parties have filed, and the Court has considered, an Amended Opening Brief (Doc. 58), an Answering Brief (Doc. 64), and a Reply Brief (Doc. 66). Appellant has filed 26 volumes of Excerpts of Record ("EOR"). (Docs. 32-33, 35-57 & 59.)

Appellant filed a Request for Oral Argument. (Doc. 67.) Oral argument is not required where "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." Fed. R. Bankr. P. 8019(b)(3). The Court finds that to be the case here; therefore, the Court denies Appellant's Request for Oral Argument.

As set forth below, the Court AFFIRMS the Judgment and AFFIRMS the Order Awarding Attorney's Fees and Costs.

## I. Background

The facts underlying the adversary proceeding and this appeal are not complex, but they are unusual, and they may be summarized as follows.[3] Well over a decade ago, on November 6, 2007, Debtor-Plaintiff Janet Nabwanda Wagabaza ("Debtor") filed a Chapter 7 bankruptcy petition. At that time, she identified her ownership interest in her personal residence in Corona, California ("the Property") on her Schedule A in support of her petition. She identified two liens on the Property: The June 24, 2004 First Deed of Trust in favor of Wells Fargo Bank, N.A. ("Wells

---

[1] The Judgment (AP Doc. 104) incorporates the Order Granting Summary Judgment Motion of Plaintiff and Denying Summary Judgment Motion of Defendant ("SJ Order") (AP Doc. 103), the Statement of Uncontroverted Facts and Conclusions of Law ("Stmt. of Facts" or "Concl. of Law," as appropriate) (AP Doc. 102), and the Memorandum of Decision regarding, *inter alia*, the Preliminary Injunction and Summary Judgment. ("Mem. of Dec.") (AP Doc. 101.)
[2] The Order Awarding Attorney's Fees and Costs ("Fee Award") (AP Doc. 185) incorporates the Memorandum of Decision on Amount of Attorney's Fees ("Att'y Fee Mem.") (AP Doc. 184).
[3] The relevant facts are not in dispute. Set forth more fully in the Memorandum of Decision, they are only briefly summarized here to the extent necessary to provide context to the Court's disposition of the appeal. Unless otherwise attributed, the source is the Bankruptcy Court's Memorandum of Decision. (*See* AP Doc. 101.)

Fargo"), and the October 31, 2006 Second Deed of Trust, which had been transferred in favor of Beveridge and recorded on January 4, 2007.[4] In late December 2007 and January 2008, Wells Fargo sought and obtained relief from the automatic stay and foreclosed on the Property as the first lienholder.[5] The Trustee's Deed Upon Sale was recorded on February 20, 2008. (AP Doc. 1-25, Adversary Compl. Ex. 13 at 1.) The proceeds from the sale of the Property did not exceed the amount due to Wells Fargo. (*Id.* (stating that the amount of unpaid debt was $440,718.30 and that the amount paid by the grantee was $284,750.00).)

In late February 2008, Debtor's debts were discharged and her bankruptcy case closed.

The same year, on May 23, 2008, Debtor's sister Zipporah Wagabaza obtained a mortgage from Countrywide to purchase the Property from Wells Fargo, resulting in a deed of trust in favor of Countrywide, which was filed the same day. After that time, Debtor continued to live in the Property as her personal residence. Seven years later, on April 15, 2015, Zipporah conveyed the Property to Debtor, subject to the Countrywide deed of trust. A few months later, on August 20, 2015, Debtor took out her own mortgage loan and paid off the Countrywide loan. Countrywide recorded a Full Reconveyance to the new lender on September 9, 2015.

Less than a year after the reconveyance, but eight years after Wells Fargo's foreclosure sale, Beveridge took action to reassert an interest in the Property. Beveridge claimed a right to the Property by application of California Civil Code § 2930, which provides that "[t]itle acquired by the mortgagor subsequent to the execution of the mortgage, inures to the mortgagee as security for the debt in like manner as if acquired before the execution." Cal. Civ. Code § 2930. In reliance on

---

[4] Because the additional entities are not relevant to the Court's analysis, the Court omits reference to the lienholders' predecessors and servicers and refers only to Wells Fargo and Beveridge. For instance, on Debtor's Schedule D, Saxon Mortgage Company ("Saxon") appears as the holder of the First Deed of Trust; Saxon was Wells Fargo's servicer. (*See* BK. Doc. 1 at 16.) Beveridge's interest is listed on Schedule D as Unified Mortgage Services. (*See id.*)
[5] It is undisputed that Beveridge's lien was junior to Wells Fargo's lien.

3

this provision of California law, Beveridge recorded a Notice of Default and Election to Sell on July 28, 2016, claiming his lien was senior to that of the new lender. On November 1, 2016, Beveridge recorded a Notice of Trustee's Sale against the Property.

Debtor countered this move by filing suit in state court two weeks later, where she sought injunctive relief, cancellation of documents, and declaratory relief.[6] She obtained a temporary restraining order ("TRO") halting the foreclosure sale, but when the scheduled hearing on the preliminary injunction was continued multiple times, on May 3, 2017, the TRO expired after Debtor's counsel was permitted to withdraw without substituted counsel.

A week later, Beveridge conducted a nonjudicial foreclosure sale of the Property and was himself the successful bidder. He recorded the Trustee's Deed on Sale on June 1, 2017 and on June 11, 2017, he served Debtor with a 3-day Notice to Quit. In response, Debtor filed a motion to reopen her bankruptcy case, which was granted, and on June 15, 2017, Debtor filed the adversary proceeding against Beveridge. (*See* BK Doc. 23 (Order Reopening); AP Doc. 1 (Adversary Complaint).) The Adversary Complaint sought declaratory relief regarding Beveridge's rights to the Property, cancellation of recorded documents (including Beveridge's June 1, 2017 Trustee's Deed Upon Sale), and injunctive relief prohibiting Beveridge from filing an unlawful detainer action against her. (AP Doc. 1.) Debtor also filed a Motion to Hold Beveridge in Contempt in the main bankruptcy case. (BK Doc. 27.)

The parties thereafter filed a number of motions in the adversary proceeding, including a motion for preliminary injunction and cross-motions for summary judgment. The Bankruptcy Court made a number of rulings as to its jurisdiction and other procedural issues. Additionally, as to the merits, the Bankruptcy Court ruled that under California state law, Beveridge's junior lien on the Property was

---

[6] Beveridge filed a counterclaim seeking declaratory relief that he was authorized to foreclose on the property. (*See* AP 90 at 70-77.)

extinguished upon the foreclosure sale by Wells Fargo, which netted insufficient proceeds to satisfy Debtor's obligation to Wells Fargo. The Bankruptcy Court also ruled that any *in personam* obligation Debtor may have had to Beveridge after the foreclosure sale was thereafter discharged in bankruptcy, and that the preemptive effect of federal bankruptcy law precluded application of state law that otherwise may have revivified Beveridge's lienholder interest in the Property when Debtor reacquired it.

As a result, the Bankruptcy Court entered Judgment awarding injunctive and declaratory relief. (*See generally* AP Doc. 104, Judgment.) The Judgment enjoins Beveridge from taking any action to enforce either the original sold-out, extinguished junior lien or the Deed on Sale recorded on June 1, 2017. (Judgment at 2-3.) The Judgment also sets forth declaratory relief providing, *inter alia*, that "legal title to the [P]roperty . . . is vested in Janet Wagabaza[, Debtor,] . . . free and clear of any liens, claims, or encumbrances of Beveridge." (*Id.*) Finally, the Bankruptcy Court awarded attorney's fees and costs to Debtor. (AP Doc. 185.) Beveridge appeals all of these rulings.

## II.     Standard of Review

The district court reviews the bankruptcy court's legal conclusions *de novo* and its factual determinations for clear error. *Neilson v. Chang (In re First T.D. & Inv., Inc.)*, 253 F.3d 520, 526 (9th Cir. 2001). Jurisdictional issues in bankruptcy appeals are reviewed *de novo*. *Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1279 (9th Cir. 2000). Issues of statutory interpretation are reviewed *de novo*. *In re Curtis*, 571 B.R. 441, 444 (B.A.P. 9th Cir. 2017). "*De novo* means review is independent, with no deference given to the trial court's conclusion." *Id.*

**III. Invalidity of Beveridge's Reasserted Security Interest in the Property**

On *de novo* review, the Court makes the following conclusions, all of which are in accord with the Bankruptcy Court's rulings.

At the time of Debtor's filing of her Chapter 7 Petition, the Property became part of the bankruptcy estate, ceasing to be Debtor's property. *See* 11 U.S.C. § 541(a)(1).

When the Bankruptcy Court granted relief from the automatic stay to the holder of the first-position mortgage on the Property (Wells Fargo), the Order expressly granted Wells Fargo the right to foreclose on the Property in accordance with non-bankruptcy law. (BK 12 (Order Granting Relief from Stay).)

When Wells Fargo foreclosed on the Property, Beveridge's junior lien interest in the Property was extinguished by operation of California law. *See Roseleaf Corp. v. Chierighino*, 59 Cal. 2d 35, 44 (1963); *In re Salamon*, 528 B.R. 171, 178 (B.A.P. 9th Cir. 2015) (applying California law), *aff'd*, 854 F.3d 632 (9th Cir. 2017); *Cadlerock Joint Venture, L.P. v. Lobel*, 206 Cal. App. 4th 1531, 1536 (2012); *Bank of Am. v. Graves*, 51 Cal.App.4th 607, 611-12 (1996) (citation omitted). Thus, Beveridge's junior lien did not "pass-through" the bankruptcy case.

Thereafter, the only possible recovery for Beveridge was to seek a deficiency judgment—an unsecured monetary judgment—against Debtor for the full amount of the underlying obligation. *See Roseleaf*, 59 Cal.2d at 43-44 (holding that a sold-out junior lienholder is not barred from seeking a deficiency judgment where the senior lienholder forecloses on the property); *Cadlerock*, 206 Cal. App. 4th at 1542 (same); *Graves*, 51 Cal. App. 4th at 612-13. In such a case, the sold-out junior lienholder sues not based on his security interest but based on the promissory note. *Cadlerock*, 206 Cal. App. 4th at 1543 ("[A] sold-out junior lienor may pursue its only available remedy of suing directly on the debtor's breach of a now unsecured junior promissory note."); *Graves*, 51 Cal. App. 4th at 612 ("A sold-out junior thus holds security that

has 'become valueless' and is permitted to sue directly on the note.") (citation omitted).

Ten days after the foreclosure sale, Debtor's unsecured, pre-petition debts were discharged in bankruptcy pursuant to 11 U.S.C. § 727(b).[7] (*See* BK Doc. 15.) This discharge included Debtor's personal liability on the Promissory Note. *See Johnson v. Home State Bank*, 501 U.S. 78, 82-83 (1991) (noting that the personal liability of the debtor on a promissory note is discharged under Chapter 7 regardless of whether the corresponding lien on real property "passes through" the bankruptcy case); *In re Davis*, 778 F.3d 809, 813 (9th Cir. 2015) (same, citing *Johnson*). The discharge "operates as an injunction against the commencement . . . of an action . . . to collect, recover or offset any . . . debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).[8] Thus, as of the date of the discharge, February 21, 2008, Debtor had no remaining obligation to Beveridge, secured or otherwise.

Beveridge's claim to the property under California Civil Code § 2930 is invalid because § 2930 is inapplicable where there is no existing debt at the time of acquisition of title by the mortgagor. More specifically, the language of § 2930 provides that after-acquired title inures to the benefit of a mortgagee (or lender) "as security *for the debt* in like manner as if acquired before the execution." Cal. Civ. Code § 2930 (emphasis added). Thus, § 2930 presupposes that the mortgagor owes a debt to the mortgagee at the time she acquires the title. Here, after the foreclosure sale and the bankruptcy discharge, both the security interest in the Property and Debtor's personal liability were extinguished as a matter of law; therefore, by its terms, § 2930 does not apply.

Alternatively, if § 2930 could be interpreted to apply to Beveridge's claimed interest here, it would conflict with and would therefore be preempted by Bankruptcy Code § 552(a). On this point, the Bankruptcy Court analyzed the preemptive scope of

---

[7] Generally, the discharge of debt is subject to the exceptions set forth in 11 U.S.C. § 523, none of which are applicable here.
[8] Thus, the discharge is sometimes referred to as the "discharge injunction."

7

§ 552(a), and the Court adopts its analysis without further comment. (*See* Mem. of Dec. at 20-25.) Accordingly, Beveridge may not rely upon § 2930 to reassert a security interest in the Property.

On *de novo* review, the Court agrees with the Bankruptcy Court's conclusion that Debtor has no remaining indebtedness to Beveridge and that Beveridge has no valid claim to the Property. Therefore, the Court AFFIRMS the Bankruptcy Court's Judgment.

## IV. Procedural Challenges

The Court also considers a number of procedural challenges raised by Beveridge. None of these challenges has merit.

### A. The Bankruptcy Court Had Subject-Matter Jurisdiction Over the Adversary Proceeding Because It Was a "Core Proceeding."

Bankruptcy judges have jurisdiction to consider "all core proceedings" that "aris[e] under [the Bankruptcy Code]" or "aris[e] in . . . a case under [the Bankruptcy Code]." 28 U.S.C. § 157(b)(1). "Core proceedings" expressly include "determinations as to the dischargeability of particular debts; . . . determinations of the validity, extent, or priority of liens; [and] . . . other proceedings affecting . . . the adjustment of the debtor-creditor . . . relationship." 28 U.S.C. § 157(b)(2)(I), (K) & (O). "A matter 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code." *In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010) (citation omitted). "A proceeding 'arises in' a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code." *Id.* (citation omitted).

Here, the Bankruptcy Court correctly identified the primary issue as "the effect of the discharge injunction on the right of Beveridge to reimpose a lien based on *in*

8

*rem* rights after the *in personam* obligation to pay ha[d] been terminated" as a result of discharge in bankruptcy. (Mem. of Dec. at 13.) This issue falls squarely within the definition of "core proceedings" set forth above. Debtor's claims also "aris[e] under" the Bankruptcy Code because their "existence depends on a substantive provision of bankruptcy law." *In re Ray*, 624 F.3d at 1131 (citation omitted). Therefore, the Bankruptcy Court correctly held that it had subject-matter jurisdiction over the adversary action. (Mem. of Dec. at 13-14.)

### B. The Prior Exclusive Jurisdiction Doctrine Does Not Require Abstention in this Action

Beveridge argues that the prior exclusive jurisdiction doctrine requires the Bankruptcy Court to abstain from hearing this action. (Opening Br. at 26-28.) The Bankruptcy Court correctly rejected this argument. (Mem. of Dec. 25-28.) Because the matter is a "core proceeding," the Bankruptcy Court has exclusive jurisdiction over the dispute, and the prior exclusive jurisdiction doctrine does not apply.

Generally, the prior exclusive jurisdiction doctrine states that "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Chapman v. Deutsche Bank Nat. Tr. Co.*, 651 F.3d 1039, 1043 (9th Cir. 2011) (citation omitted). The doctrine likewise applies to *quasi in rem* actions.[9] *Id.* at 1044. The prior exclusive jurisdiction doctrine serves as "a mandatory jurisdictional limitation" rather than a "discretionary abstention rule." *Chapman*, 651 F.3d at 1043.

Fundamentally, to constitute prior exclusive jurisdiction, the court first exercising jurisdiction over the *res* must be "a court of competent jurisdiction." *See Palmer v. Texas*, 212 U.S. 118, 125 (1909) ("If a court of competent jurisdiction, Federal or state, has taken possession of property, or by its procedure has obtained

---

[9] Where an action seeks to "determine interests in specific property as against the whole world" it is characterized as an *in rem* action, but where "the parties' interests in the property [merely] serve as the basis of the jurisdiction," in an action, it is *quasi in rem*. *Id.* (citing Black's Law Dictionary 1245 (6th ed. 1990).)

9

jurisdiction over the same, such property is withdrawn from the jurisdiction of the courts of the other authority as effectually as if the property had been entirely removed to the territory of another sovereignty.").

In this instance, the state court is not "a court of competent jurisdiction" because this is a core proceeding and bankruptcy courts have exclusive jurisdiction over core proceedings. *See In re Gruntz*, 202 F.3d 1074, 1081-82 (9th Cir. 2000) (bankruptcy courts have exclusive jurisdiction over bankruptcy cases and "all matters connected with the bankruptcy estate"); *In re Birting Fisheries, Inc.*, 300 B.R. 489, 499 (B.A.P. 9th Cir. 2003) (same). Because the matter is a "core proceeding" within the exclusive jurisdiction of the Bankruptcy Court, and because the state court's exercise of jurisdiction would interfere with the Bankruptcy Court's jurisdiction, the state court is not a court of competent jurisdiction and therefore the prior exclusive jurisdiction doctrine does not bar the Bankruptcy Court's exercise of jurisdiction.

### C. Debtor's Purported Removal of the State-Court Action

Almost five months after the filing of the Adversary Complaint, Debtor also purported to remove the state-court action to the Bankruptcy Court, filing it under the same adversary case number as the Adversary Complaint. (*See* AP Doc. 70 (Notice of Removal).) This was procedurally incorrect. Beveridge contends this requires reversal of the Bankruptcy Court's judgment. (*See* Opening Br. at 18-21.)

The Bankruptcy Court eventually remanded the state-court action, clarifying that the remand was not meant to affect the Bankruptcy Court's Judgment regarding the claims raised in the Adversary Complaint. (AP Docs. 112-113.) Beveridge objects to the Bankruptcy Court's delay in remanding the case. (*See* Opening Br. at 18-21.) However, the portion of the record to which he cites reveals only that Beveridge had requested an entry of default be entered against Debtor. (*See* Opening Br. at 18 (citing EOR Vol. 11:275); Doc. 42-2, EOR Vol. 11:275-77 (Request for Entry of Default); Doc. 42-2, EOR Vol. 11:281 (noting Debtor's status as "Default Requested").) To the extent that Beveridge may contend that an entry of default

against Debtor was imminent, and that as a result of the Bankruptcy Court's action, he is now precluded from obtaining relief in the state-court action, it must still be rejected. As noted above, this matter is within the exclusive jurisdiction of the Bankruptcy Court.

Thus, the purported removal and subsequent remand does not require reversal of the Bankruptcy Court's Judgment.

### D. Adjudication of the Present Dispute as an Adversary Action Was Appropriate

Beveridge argues that Debtor has no private right of action for an alleged violation of the § 524(a)(2) discharge injunction and that the present dispute should have been dismissed because it was improperly filed as an adversary action. (Opening Br. at 5-8 & 17-18.) In considering Beveridge's arguments, it is helpful to give careful attention to the types of relief sought by Debtor in the adversary action. As noted above, Debtor filed the Adversary Complaint seeking various forms of injunctive and declaratory relief, including injunctive relief to prohibit Beveridge from taking actions that are inconsistent with Debtor's continued possession of the Property, declaratory relief that Beveridge has no legal right or claim to the Property, and declaratory relief regarding the invalidity of the Trustee's Deed Upon Sale recorded by Beveridge against the Property.

Beveridge argues that *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002) precludes "a private right of action to enforce § 524"; therefore, Debtor "does not have a right to bring an adversary proceeding." (Opening Br. at 6.) Because the type of relief sought here differs from that sought in *Walls*, *Walls* does not control. In *Walls*, the Ninth Circuit considered whether a debtor could maintain a claim under the Fair Debt Collection Practices Act against a creditor that continued to attempt to collect a debt after a debtor's bankruptcy discharge. The Ninth Circuit held that Congress intended no private right of action to enforce violations of the discharge injunction, stating "[t]he obvious purpose is to enjoin the proscribed conduct—and the

traditional remedy for violation of an injunction lies in contempt proceedings, not in a lawsuit such as this one for money damages." *Walls*, 276 F.3d at 508 (internal quotation marks and citation omitted). That the *Walls* court was focused upon whether a private right of action for money damages was available is further evidenced by its discussion of available remedies regarding violations of other provisions of the Bankruptcy Code. *See Walls*, 276 F.3d at 508-10. Specifically, the court noted that in 1978, Congress amended the automatic stay provision of the Bankruptcy Code to confer a private right of action to sue for damages for willful violations of the automatic stay provisions. *Id.* at 509. The court also noted that although Congress amended the discharge injunction at the same time, it did not include a similar provision authorizing a private right of action for damages based on violations of the discharge injunction. *Id.* In light of this contrast, the court declined to imply a private right of actions for damages for a violation of the discharge injunction.

More pointedly, the only claims before the *Walls* court were claims for damages, because the court expressly stated it was not considering claims for injunctive relief and declaratory relief. *Id.* at 511 ("To the extent that Walls appeals the district court's dismissal of her claims for declaratory and injunctive relief, . . . we decline to consider it because she failed to brief these issues.") Thus, the Court reads *Walls* as precluding claims for damages based on violations of a discharge injunction, but not precluding the declaratory and injunctive relief sought here.

Beveridge also relies on *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186 (9th Cir. 2011). *Barrientos* expressly reaffirms *Walls* and addresses the manner in which a debtor may remedy a violation of the discharge injunction. *Barrientos* held that violations of the discharge injunction are to be addressed by the filing of a motion pursuant to Federal Rule of Bankruptcy 9014(a) rather than by the filing of an adversary proceeding pursuant to Federal Rule of Bankruptcy 7001. *See Barrientos*, 633 F.3d at 1189-91 (upholding the bankruptcy court's dismissal of an adversary

complaint). The *Barrientos* court reasoned that seeking injunctive relief in an adversary action relating to a bankruptcy discharge is tantamount to seeking an injunction to enforce an injunction. *Id.* Because, by operation of law, the discharge itself functions as an injunction against collection of discharged debts, the debtor would in effect be seeking an injunction she already has. *Id.* at 1190. In such a situation, the debtor must pursue the contempt remedy because further injunctive relief "would be superfluous." *Id.*

The Bankruptcy Court correctly concluded that *Barrientos* does not control. (*See* Mem. of Dec. at 28-31.) Here, Debtor has an additional basis for the filing of an adversary action that Barrientos did not have. Unlike Debtor, Barrientos did not file "a proceeding to determine the validity, priority, or extent of a lien or other interest in property," as permitted by Bankruptcy Rule 7001(2) or "a proceeding to obtain declaratory judgment relating" thereto, as permitted by Bankruptcy Rule 7001(9). The *Barrientos* court simply did not consider whether the issues in this case must be adjudicated as a contempt motion. Conversely, the Bankruptcy Rules clearly permit the filing of an adversary action to address these issues.

A published opinion of the Ninth Circuit Bankruptcy Appellate Panel (BAP), decided after *Walls* and *Barrientos*, is in accord with this Court's ruling. *See In re Nash*, 464 B.R. 874 (B.A.P. 9th Cir. 2012). There, the BAP considered an appeal of an adversary action in which the bankruptcy court granted declaratory relief clarifying that a pre-petition gambling debt was discharged in bankruptcy. *Id.* at 876. Although purporting to refrain from "deciding whether *Barrientos* [was] implicated," the BAP nevertheless considered the merits of the debtor's claim for declaratory relief in an adversary action:

> In this case, in addition to seeking monetary sanctions and an injunction, Nash's adversary complaint prayed for a declaratory judgment that his debt to Hard Rock was discharged in his bankruptcy. An adversary proceeding targeting this type of relief is proper under Rule

13

7001(6) and (9) (providing for an adversary proceeding for a declaratory judgment or for a determination of dischargeability of a debt).

*Id.* at 879.

A Fifth Circuit case, *Matter of Nat'l Gypsum Co.*, 118 F.3d 1056 (5th Cir. 1997), is also in accord. There, after an insurer attempted to collect the pre-confirmation debts of the debtor's predecessor, the debtor filed an adversary action for declaratory relief, seeking a declaration that the pre-confirmation debts were discharged and the discharge injunction therefore prohibited the insurer's attempts to collect the debt. *Id.* at 1059. The Court held that the discharge injunction conferred on the debtor a substantive right that, although "often enforced by a motion for contempt," was "also enforceable through a declaratory judgment action." *Id.* at 1063.

Thus, in accord with *In re Nash* and *Matter of Nat'l Gypsum Company*, the Court holds the Bankruptcy Court did not err in granting the declaratory relief sought in the Adversary Complaint.

The Bankruptcy Court likewise did not err in granting injunctive relief. The injunctive relief granted by the Bankruptcy Court is not merely an injunction to comply with the discharge injunction, as *Barrientos* cautions against. Where the discharge injunction prohibits various attempts to collect on a "debt as a personal liability of the debtor," the injunctive relief granted by the Bankruptcy Court is broader, and it involves Debtor's right to the Property. The Bankruptcy Court enjoined Beveridge from taking action that is inconsistent with Debtor's ownership of the Property free and clear of Beveridge's claim thereto. This injunction flows directly from the concurrently granted declaratory relief that title to the Property is vested in Debtor "free and clear of any liens, claims, or encumbrances of Beveridge." (Judgment at 5.) The Court therefore concludes that the Bankruptcy Court properly granted injunctive relief.

In sum, none of Beveridge's procedural challenges preclude the relief granted by the Bankruptcy Court.

## IV. Attorney's Fees

Based on a contractual attorney-fee provision, the Bankruptcy Court awarded attorney's fees to Debtor totaling $109,787.25. (AP Doc. 184.) Beveridge appeals the award.

The award is based upon a provision in the Promissory Note, secured by the Deed of Trust as to the Property, executed by Debtor and Beveridge's predecessor on October 11, 2006. (*See* Doc 44-1 at 21-22, V13 at 26-27 ("Prom. Note").) The provision permits fees to be awarded to the lender, but not the borrower, so the award is also based on a provision of California law that requires reciprocity in the enforcement of unilateral attorney-fee provisions. *See* Cal. Civ. Code § 1717(a).

More specifically, the Promissory Note defines "default" as the failure to "pay the full amount of each monthly payment due under [the] Note by the [15th day of each month]." (Prom. Note at 1.) In the event of default, "the [lender] may demand that [the borrower] pay immediately all amounts [due] under [the] Note." (*Id.*) If the lender makes such a demand, the lender "will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law." (*Id.*) Such expenses expressly include "reasonable attorney's fees." (*Id.*) This provision inures to the benefit of the lender only; however, § 1717(a) requires reciprocity in attorney fee provisions, even where the contract provides for attorney's fees only to one party:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Cal. Civ. Code § 1717(a).

Three (sometimes four) conditions must be met before fees may be awarded pursuant to § 1717(a). "First, the action in which the fees are incurred must be an

15

action 'on a contract,' a phrase that is liberally construed." *In re Penrod*, 802 F.3d 1084, 1087 (9th Cir. 2015). "Under California law, an action is "on a contract" when a party seeks to enforce, or avoid enforcement of, the provisions of the contract." *Id.* at 1088. "In determining whether an action is 'on the contract' under section 1717, the proper focus is not on the nature of the remedy, but on the basis of the cause of action." *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 347 (2008). "Second, the contract must contain a provision stating that attorney's fees incurred to enforce the contract shall be awarded either to one of the parties or to the prevailing party." *In re Penrod*, 802 F.3d at 1087. "[T]hird, the party seeking fees must be the [prevailing] party." *Id.* at 1087-88. And fourth, where the prevailing party is not the party specified in the contract, the party that is specified in the contract would have been entitled to recover his fees had he prevailed. Cal. Civ. Code § 1717(a).

All but the first condition are easily disposed of here.

As to the second condition, the language quoted above clearly provides that the lender "will have the right to be paid back for all its costs and expenses," expressly including "reasonable attorney's fees." Read in context, this is a provision that requires the borrower to repay to the lender for attorney's fees incurred in collecting the Promissory Note. Therefore, this provision requires an award of "attorney's fees incurred to enforce the contract" within the meaning of § 1717(a). Beveridge argues that this attorney fee provision does not authorize a separate award of fees. (*See* Opening Brief 30-32.) For this argument, Beveridge relies on *Hart v. Clear Recon Corp.*, 27 Cal. App. 5th 322 (Ct. App. 2018) and *Chacker v. JPMorgan Chase Bank, N.A.*, 27 Cal. App. 5th 351 (Ct. App. 2018), *as modified on denial of reh'g* (Oct. 17, 2018). Both of these cases held that § 1717(a) is not applicable to attorney fee clauses that provide that amounts expended by the lender to protect its rights would be added to the balance of the borrower's indebtedness. *See Hart*, 27 Cal. App. 5th at 325 (considering the clause "[a]ny amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument"); *Chacker*,

16

27 Cal. App. 5th at 354 (considering an identically worded provision). That is not the case here, and the Court concludes the second condition is met.

The third condition is met because the party seeking attorney's fees, the Debtor, prevailed in the adversary action.

The fourth condition is also met. In foreclosing, and in opposing the claims asserted in the adversary action, Beveridge sought to enforce rights to the Property that derived from the Promissory Note, secured by the Deed of Trust. Thus, had he prevailed, he would have been entitled to attorney's fees under the Promissory Note.

Requiring more discussion is the first condition, whether the adversary action was an "action on a contract." Relying on *In re Penrod*, the Bankruptcy Court concluded that the adversary action was "on a contract" and awarded fees. (*See* Doc. 55-1, 04/12/18 BK Tr. at 6-14.) There, the debtor bought a new car, financing the entire purchase amount plus $7,000 in "negative equity" in the vehicle she traded in. 802 F.3d at 1805. In her subsequent bankruptcy case, the parties litigated extensively over whether the additional amount of negative equity could be treated as a secured claim or whether it must be treated as an unsecured claim. *Id.* at 1805-07. The debtor ultimately prevailed and sought attorney's fees. *Id.* at 1807. The bankruptcy court and the district court denied the debtor's fee application, holding that she did not prevail "on the contract" because she prevailed only as a matter of bankruptcy law. *Id.*

The Ninth Circuit reversed. Although earlier case law supported the bankruptcy and district court's decision, the Supreme Court held otherwise in *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443 (2007). Specifically, *Travelers* expressly abrogated *In re Fobian*, 951 F.2d 1149, 1153 (9th Cir. 1991), which had held "where the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment by the losing party." *Id.* at 1153. The Supreme Court first noted the lack of textual support in the Bankruptcy Code for

17

this rule. 549 U.S. at 451-54. In the absence of such support, the more general provision of § 502(b) applies, and claims enforceable under state law are allowed in bankruptcy unless expressly disallowed. *Id.* at 452-54.

Relying on *Travelers'* directive to apply state law, the Bankruptcy Court examined whether fees were awardable under § 1717(a). It first noted that the action taken by Beveridge was taken to enforce the Promissory Note and the Deed of Trust. (*See* Doc. 55-1, 04/12/18 BK Tr. at 5 ("[T]he action being taken by Beveridge [was] to foreclose for default, non-payment and that would be an action to enforce.").) Thereafter, the Bankruptcy Court concluded that when the Debtor filed the adversary action in response to Beveridge's actions, it was to avoid enforcement of the Promissory Note and the Deed of Trust. (*See generally id.* at 6-17.)

The Court agrees. The adversary action was "on a contract" because Debtor sought to avoid enforcement of the provisions of the agreement containing the attorney fee provision. *See In re Penrod*, 802 F.3d at 1088. That the adversary action sought declaratory and injunctive relief does not detract from this conclusion, because "the proper focus" is "on the basis of the cause of action" rather than on "the nature of the remedy." *Kachlon*, 168 Cal. App. 4th at 347-48 (holding that a declaratory relief claim that sought an order to reconvey a deed of trust was an action "on a contract" because it sought a declaration of rights based upon the parties' agreement).

Beveridge's arguments regarding the "on a contract" condition do not convince the Court otherwise. Two key cases upon which Beveridge relies involve resolution of issues regarding the automatic stay which, by their nature, involve a procedural question related to whether an action can proceed at all rather than substantive questions related to the contractual rights of the parties. *See In re Johnson*, 756 F.2d 738, 740 (9th Cir. 1985) ("The question for determination here, then, is whether a motion for relief from an automatic stay pursuant to 11 U.S.C. § 362(d) is an 'action on a contract' to which California law should be applied."); *Green Tree Servicing LLC v. Giusto*, 553 B.R. 778, 781 (N.D. Cal. 2016) (also involving automatic stay

18

proceedings). These cases hold that proceedings regarding whether the automatic stay provision applies are not actions "on a contract," but the present action implicates the contractual rights of the parties in a way that *Johnson* and *Green Tree* did not.

Other cases Beveridge relies upon involve issues unrelated to the contractual rights of the parties. *See Bos v. Bd. of Trustees*, 818 F.3d 486, 491 (9th Cir. 2016) ("In Bos's case, by contrast, the relevant action did not raise any question about the enforceability of the Trust Agreements or the Note. Such action was therefore not 'on a contract,' and the attorney's fees Bos incurred are not recoverable under section 1717."); *In re Hosseini*, 504 B.R. 558, 568-69 (B.A.P. 9th Cir. 2014) ("[T]he debtor had initiated the adversary proceeding under § 523(a)(8) to discharge the student loan debt, not to contest its terms or amount. [As such, it] was not 'a contract dispute arising out of the borrowing on the [promissory] note,' but 'an action brought by the [d]ebtor to have the debt declared [discharged].'").

The Court concludes that Debtor has met all the conditions for application of California Civil Code § 1717(a). Accordingly, the Court AFFIRMS the Bankruptcy Court's attorney fee award in favor of Debtor.

### V. Conclusion

As set forth herein, the Court AFFIRMS the Bankruptcy Court's Judgment and AFFIRMS the Order Awarding Attorney's Fees and Costs.

**IT IS SO ORDERED.**

**DATE:** August 7, 2019

_____
The Hon. Josephine L. Staton
United States District Judge

CC: BAP; BKCOURT